UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HAROLD FOLEY III, ET AL.                    CIVIL ACTION


VERSUS                                      NO: 10-2827


SAFG RETIREMENT SERVICES,                   SECTION: R(3)
INC., ET AL.

### ORDER AND REASONS

Before the Court is plaintiffs' motion for a preliminary injunction to enjoin defendants from converting or removing any VOB general partner, appointing substitute general partners or taking control or possession of any partnership property. Because plaintiffs failed to show a substantial likelihood of irreparable injury absent an injunction, the Court DENIES plaintiffs' motion.


**I.   Background**

Plaintiffs Harold and Verlyn Foley are the sole members and officers of VOB, which is a developer of low-income housing. Defendant SAFG Retirement Services, formerly AIG Retirement Services, is an investor in Low Income Housing Tax Credits ("LIHTCs") through its affiliates (collectively, "SunAmerica"). VOB and SunAmerica entered into twelve partnership agreements to build low-income housing in Louisiana, Mississippi, and Tennessee.  Plaintiffs assert that these partnerships with SunAmerica make up eighty percent of the VOB development

portfolio.  In each partnership, an affiliate of VOB acts as the
general partner and an affiliate of SunAmerica acts as the
limited partner and equity investor, providing predevelopment
loans, construction loans, bridge loans and capital contributions
to the partnerships.  In exchange for its equity investment,
SunAmerica collects the LIHTCs, which it then markets to its
customers to offset their tax obligations.  The developer is
remunerated in the form of various fees that are earned at
different stages of the project.  Most of the partnership
agreements contain the same structure and provisions.  SunAmerica
is entitled to convert a general partner to a special limited
partner and appoint a substitute general partner if the general
partner breaches a partnership agreement.  If the breach is not
cured within ninety days, SunAmerica may remove the converted
special limited partner from the partnership.[1]

In this case, plaintiffs initially complained that
SunAmerica engaged in a scheme to take control and ownership of
three projects under construction in New Orleans (the "New
Orleans Projects") by mismanaging the projects and attempting to
cause VOB to default.[2]  In particular, plaintiffs allege that
defendants manufactured their default by pressuring plaintiffs to
retain an incompetent general contractor.  Plaintiffs assert

---

[1]    *See* R. Doc. 128 at §§ 8.3 - 6.

[2]    R. Doc. 1.

2

numerous state law claims, including breach of contract and
breach of fiduciary duty.  Plaintiffs assert that when the New
Orleans projects are completed, SunAmerica will be obligated to
make equity investments in the partnerships of approximately
$28,000,000 in exchange for LIHTCs totaling approximately
$31,270,000.  When this happens, plaintiffs contend that they
will be entitled to development and production incentive fees of
approximately $3,400,000.

Shortly after plaintiffs filed this lawsuit, defendants
sent notices to plaintiffs stating, *inter alia*, that plaintiffs
had breached certain provisions of the partnership agreements and
would be removed as general partners from the twelve partnerships
if the defaults were not cured within 30 days.  In response,
plaintiffs filed an amended complaint asserting that defendants
caused them to default on additional, completed housing projects
outside of New Orleans (the "Finished Projects").  They contend
that SunAmerica has wrongfully withheld equity contributions due
on these completed projects, and that as a result, plaintiffs
have been denied payment of at least $5,300,000 in fees.
Plaintiffs further allege that defendants extended pre-
development loans to them for four proposed projects (the
"Undeveloped Projects"), but later breached the loan contracts by
declining to make equity investments in the partnerships.

Plaintiffs assert that they obtained LIHTCs for these proposed projects.

The parties then entered a standstill agreement under which VOB was entitled to notice before SunAmerica acted to convert or remove any VOB partners.  On December 3, 2010, defendants notified plaintiffs that their interest in six partnerships was being converted from general partner to special limited partner, thereby terminating plaintiffs' control and management of five completed projects and one of the New Orleans projects.  In response, plaintiffs filed a motion for a temporary restraining order and preliminary injunction seeking to enjoin defendants from taking any action to convert the interest of any VOB general partner to that of a special limited partner, otherwise remove any VOB general partner, appoint a substitute general partner in place of any VOB general partner, or take possession or control of any of the properties.  The Court denied plaintiffs' motion for a temporary restraining order because plaintiffs did not demonstrate that irreparable injury would occur before the motion for preliminary injunction could be heard,[3] and set the hearing on the motion for preliminary injunction for January 10, 2011.

In the meantime, defendants appointed McCormack Baron Salazar, Inc., a national developer of affordable housing, as the

---

[3]     R. Doc. 60.

substitute general partner for the six converted developments. Defendants also informed the lenders and the relevant state agencies, the Mississippi Home Corporation, the Louisiana Housing Finance Agency and the Tennessee Housing Development Agency of the conversions.  In addition, defendants informed lenders of six other projects, Indiana Homes, King Ranch Homes, Orleans Place, Riverbend Place, Horizon Apartments, and Blossom Apartments of their intention to convert plaintiffs' general partnership interests to special limited partners because of their breaches of the respective partnership agreements.  To date, defendants have not actually converted plaintiffs' partnership interests in these latter six developments.

Following an interval during which the parties unsuccessfully tried to resolve their differences, the Court held a hearing on plaintiffs' motion for a preliminary injunction on July 28, 2011.  The Court limited the hearing to the issue of whether the plaintiffs suffered a substantial threat of irreparable injury.


## II.  Standard

A party may obtain a preliminary injunction only if: (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat the movant will suffer irreparable harm if the injunction is not granted; (3) the

threatened injury to the movant outweighs the potential injury to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest. *Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003).  When evaluating whether the movant has satisfied these requirements, the Court must remember that "[a] preliminary injunction is an extraordinary remedy which courts grant only if the movant has clearly carried the burden as to all four elements." *Id.* Granting a preliminary injunction is "the exception and not the rule." *House the Homeless, Inc. v. Widnall*, 94 F.3d 176, 180 (5th Cir. 1996).  The central prerequisite for injunctive relief "is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be reached." *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 629 (5th Cir. 1985)(citing 11 WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.1). The Court has "no discretion to grant [preliminary injunctive] relief absent an adequate showing of likely irreparable harm." *Id.*  As noted, the hearing on July 28, 2011 focused on whether plaintiffs demonstrated a substantial threat of irreparable harm.


**III. Discussion**

      A.   *Contractual Limitation of Remedies*

Interpretation of a contract requires a "determination of the common intent of the parties." LA. CIV. CODE art. 2050.  The contracts between SunAmerica and the plaintiffs define a conversion event, state SunAmerica's rights following a conversion event, and list the remedies available to the plaintiffs if SunAmerica improperly asserts that such a conversion occurred.  Under the agreements, a "Conversion Event" means that VOB has breached an obligation under the agreement or has engaged in intentional misconduct, or the partnership has defaulted under a particular loan.[4]  If a Conversion Event occurs, SunAmerica may convert VOB from a general partner to a special limited partner, after which VOB has no right to participate in the management of the project or to receive certain distributions of money.[5]  In addition, SunAmerica may select a substitute general partner to replace VOB.[6]  If the Conversion Event is not fully cured within 90 days, SunAmerica may remove VOB as partner.[7]  As a special limited partner, VOB retains an interest in the net cash flow of the property, the

---

[4]    Joint Ex. 128 at § 8.3(a).  The South Range partnership agreement is used as a representative example of the partnership "Conversion Event" provisions.

[5]    *Id.* at § 8.3(g).

[6]    *Id.* at § 8.4.

[7]    *Id.* at § 8.6.

7

operational cash flow, to the extent any exists, and a back-end percentage distribution.[8]

VOB's sole contractual remedies in the event that SunAmerica improperly asserts that a Conversion Event occurred are as follows:

> (i) to sue for the equitable remedy of reinstatement of [the VOB] GP as General Partner, (ii) to recover from the Partnership any distributions that [VOB] did not receive with respect to the period from the Conversion Date until the date on which [VOB] GP is reinstated as General Partner . . . and (iii) reasonable attorney's fees.  In no event shall [the VOB] GP be entitled to actual, consequential or punitive damages based on or related to such improper or incorrect assertion (other than as allowed by (ii) and (iii) above).[9]

Defendants argue that plaintiffs have no right to preliminary injunctive relief because they assented to the remedies provision in section 8.3 of the partnership agreements. Plaintiffs assert that preliminary injunctive relief is consistent with the partnership agreements.  According to plaintiffs, because reinstatement of a general partner is a form of injunctive relief, and they are permitted to sue for reinstatement, they should be able to "seek an interlocutory

_____

[8]     For example, if the amount of LP loans for a partnership is less than $100,000, a conversion event would reduce VOB's net cash flow percentage distribution to 65 percent and the back-end percentage distribution to 70 percent.  The distribution percentages continue to decrease as the amount of LP loans increase.

[9]     *Id.* at § 8.3(h).

injunction...while they litigate their entitlement to the permanent remedy."[10]

Plaintiffs' argument ignores the language of section 8.3 of the partnership agreements.  Section 8.3(h) explicitly states that it contains the *sole* remedies available to plaintiffs in the case of improper conversion.  This section also contains the phrase "to sue for reinstatement", which necessarily assumes that VOB has been removed as general partner.  The contract does not contemplate that VOB can sue to prevent its removal.  Rather, the contract provides only for after-the-fact remedies in the event that SunAmerica improperly asserts that a Conversion Event occurred.  Contrary to plaintiffs' assertion, entitlement to reinstatement after a trial on the merits does not mean that they are entitled to prevent the removal from occurring in the first place.

Interpreting the contracts as allowing for reinstatement after removal, but not pre-removal relief, is buttressed by the other subsections of the remedies provision.  Under Louisiana law, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." LA. CIV. CODE art. 2050. Section 8.3(h)(ii) of the partnership agreements states that

---

[10]    R. Doc. 70 at 2.

plaintiffs are solely entitled to recover any distributions they "did not receive with respect to the period from the Conversion Date until the date on which [the VOB] GP is reinstated as a General Partner."[11] If plaintiffs were entitled to prevent the removal through preliminary injunctive relief, then they would not have any lost distributions to recover, and this provision of the contract would be superfluous. The exclusive remedy in section 8.3(h)(ii) presumes that the plaintiffs will not be general partners during the course of litigation.

The limitation on plaintiffs' contractual remedies in section 8.3 of the partnership agreements applies to claims related to their conversion to special limited partners. Plaintiffs' motion for preliminary injunction seeks to enjoin defendants from taking actions related to partnership conversions.[12] Plaintiffs want to prohibit defendants from converting or removing any VOB general partner to a special limited partner, appointing any substitute general partner, or taking possession or control of any property. These actions are all related to conversion and defendants are permitted to take them in connection with a conversion under the terms of the

---

[11]    Joint Ex. 128 at § 8.3(h).

[12]    R. Doc. 128 at §8.4(e).

10

contracts.[13]  Plaintiffs, therefore, are limited by the remedies provision of section 8.3, which does not allow for preliminary injunctive relief.

For all of the foregoing reasons, plaintiffs are foreclosed from enjoining the conversions by the express terms of the partnership contracts.

B.   *Irreparable Injury*

Even if the partnership agreements did not preclude VOB from seeking a preliminary injunction, plaintiffs have not demonstrated that they will suffer irreparable injury in the absence of a preliminary injunction.  As stated earlier, in order to obtain a preliminary injunction, plaintiffs must establish a "substantial threat" that they will suffer irreparable injury if the injunction is not granted.  *Canal Authority of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974); *see also United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001) (quoting 11A WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.1) ("strong threat" of irreparable injury is required); *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (plaintiff must demonstrate a "substantial likelihood"

---

[13]   *See* R. Doc. 128 at §8.3 (granting SunAmerica the right to convert GP partner to limited partner following a conversion event); § 8.4 (providing for the admission of a substitute general partner after a conversion); § 8.6 (granting SunAmerica the right to remove the plaintiff if the conversion event is not cured within ninety days).

of irreparable injury).  Plaintiffs must show that there is a

"presently existing actual threat" in order to obtain a

preliminary injunction; a "speculative injury" is not sufficient.

*Emerson*, 270 F.3d at 262.  And there is "no irreparable injury

where money damages would adequately compensate a plaintiff."

*DFW Metro Line Serv. v. Southwestern Bell Tel. Co.*, 901 F.2d

1267, 1269 (5th Cir. 1990); *see also Deerfield Medical Center*,

661 F.2d at 338 ("An injury is 'irreparable' only if it cannot be

undone through monetary remedies.").  The Supreme Court has

described the test for irreparable injury as follows:

> The key word in this consideration is irreparable.  Mere
> injuries, however substantial, in terms of money, time and
> energy necessarily expended in the absence of [an
> injunction], are not enough.  The possibility that adequate
> compensatory or other corrective relief will be available at
> a later date, in the ordinary course of litigation, weighs
> heavily against a claim of irreparable harm.

*Sampson v. Murray*, 415 U.S. 61, 90 (1974)(quoting *Virginia

Petroleum Jobbers Ass'n v. Federal Power Commission*, 259 F.2d

921, 925 (D.C. Cir. 1958)).

Plaintiffs argue that they will suffer irreparable injury in

the form of destruction of a large portion of their business,

inability to obtain tax credits and third-party financing for new

projects, loss of control of the current projects, and damage to

their business reputations as low-income housing developers.

None of these potential injuries supports a preliminary

injunction in this matter.

1.  Destruction of Business

First, plaintiffs argue that if they are not granted a preliminary injunction, their business will be destroyed. Plaintiffs rely heavily on *Humana, Inc. v. Jacobson,* 804 F.2d 1390 (5th Cir. 1986) to support this argument.  In *Humana*, a hospital demonstrated that if the defendant billed patients for certain services, it would lose its Medicare funding, which "would directly deprive [it] of more than 50% of its business" and "would also cause many of the physicians who direct their patients to [the hospital] to treat their patients at other hospitals." *Id.* at 1394.  The Fifth Circuit found that the hospital "would be in effect out of business" in the absence of injunctive relief and held that a preliminary injunction was warranted. *Id.* at 1394.  Plaintiffs' reliance on *Humana* is misplaced.  First, *Humana* does not establish a talismanic rule that loss of more than fifty percent of a business is an entitlement to preliminary injunctive relief because the Court noted that the cumulative effect of defendant's conduct would be that the hospital "would be in effect out of business".  Although there are other cases in which the Fifth Circuit has held that destruction of a business was an irreparable injury, the threatened loss in those cases was of the entire business. *See, e.g., Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.,* 875 F.2d 1174, 1179 (5th Cir. 1989)(explaining that a preliminary

13

injunction is generally inappropriate when the harm to the movant is strictly financial, but that "an exception exists where the potential economic loss is so great as to threaten the existence of the movant's business."). Read properly, *Humana* is consistent with those cases. Further, *Humana* is distinguishable because in *Humana*, a single doctor was jeopardizing the Medicare eligibility of an entire medical facility. While the potentially staggering losses were quantifiable, it was highly improbable that Humana would be able to recover those losses from the individual doctor following a trial on the merits. This case presents no such impediment to recovery.

Moreover, the Fifth Circuit has held that if being forced out of business is compensable in money damages, then there is no irreparable injury. *See DFW Metro Line Serv. v. Southwestern Bell Tel. Co.*, 901 F.2d 1267, 1268 (5th Cir. 1990)(finding no irreparable injury where "any potential injury suffered by [the movant](including its going out of business) could be calculated and recompensed in the form of damages."); *see also Consol. Rest. Operations, Inc. v. Nat'l Processing Co., LLC*, 2002 WL 1432469, at *6 n.8 (N.D. Tex. June 28, 2002) (it was "far from certain" that plaintiff had demonstrated that it would suffer irreparable injury even if it were forced to cease operations). Lesser business losses are not considered irreparable. *See, e.g., U.L. Coleman Co., Ltd v. Bossier City-Parish Metropolitan Planning*

14

*Comm'n*, 2009 WL 497634, at *12 (W.D. La. Feb. 26, 2009) (denial of permit for housing development, causing "diminution in property value, loss of business opportunity, and/or lost profit" were compensable with monetary damages and did not constitute irreparable injury); *Hunt v. Bankers Trust Co.*, 646 F.Supp. 59, 64 & n.6 (N.D. Tex. 1986) (lost cash flow was not irreparable, contrasting cases in which the plaintiff's business would clearly be destroyed or damages would be difficult or impossible to calculate).

    In a similar vein, the Second Circuit has distilled its jurisprudence on the availability of injunctive relief for threatened loss of a business to the principle that when a party claims that its business will be destroyed, irreparable injury is absent if the alleged loss of goodwill is speculative and lost profits can be compensated with money damages. *See Tom Doherty Assocs., Inc. v. Saban Entm't*, 60 F.3d 27, 38 (2d Cir. 1995) (affirming the grant of a preliminary injunction because the plaintiffs made a clear showing that the inability to market a unique good and become a major publisher of children's books would result in an unquantifiable and non-speculative loss of prospective goodwill and profits). As is demonstrated below, both of these factors are present here. The plaintiffs have not shown that their business will be irreparably harmed if they are not reinstated as general partners before trial. The trial on

the merits on the issue of their entitlement to reinstatement is set for April 16, 2012.

    *a. Loss of Current Developments*

    Plaintiffs have not shown that a failure to grant a preliminary injunction will lead to the destruction of their current low-income housing development portfolio.  Harold and Verlyn Foley testified that the twelve partnerships with SunAmerica constitute eighty percent of VOB's low-income housing portfolio.  The six converted properties, in turn, make up half of that eighty percent.  In his affidavit, Harold Foley asserts that allowing the conversions to stand would effectively destroy half of their business.[14]  The record does not support this conclusion.

    First, as special limited partners, plaintiffs are still partners and are still entitled to certain distributions from the partnership after conversion.  The conversion deprives plaintiffs of development fees and reduces their other distributions in accordance with the chart in "Exhibit M" of the partnership agreements.[15] Any lost or reduced distributions are compensable in monetary damages following a trial on the merits, and therefore do not amount to an irreparable injury.

_____

[14]    R. Doc. 58, Ex. D at 22.

[15]    *See, e.g.*, Joint Ex. 125 at 196.

Second, plaintiffs' assertion that their loss of control will result in the substitute general partner "piling on additional partnership debt"[16] and running the partnerships into the ground is unfounded.  The substitute general partner is McCormack Baron Salazar ("MBS"), a national affordable housing developer.  In its thirty-seven years of operation, MBS has developed and managed properties in thirty-five different cities. Hillary Zimmerman, senior vice president and general counsel of MBS, testified that MBS and SunAmerica have been doing business together since 1989, and that during that time MBS has replaced numerous general partners in low-income housing projects. Further, as a general partner, MBS has a fiduciary duty to the limited partners (including VOB developments), and plaintiffs are not liable for "any liabilities and obligations directly arising from the negligence, intentional misconduct or breach of the [Partnership] Agreement by any Substitute General Partner."[17] MBS cannot make a unilateral decision to take on large loans. The substitute general partner must get approval from SunAmerica to borrow in excess of $50,000.[18]  In addition, part of the substitute general partner's payment is a "soft payment" that is

---

[16]    R. Doc. 58-10.

[17]    Joint Ex. 125 at 62.

[18]    *See, e.g.* Def. Ex. 7 at ¶ 11.

dependent on a positive net cash flow from the partnership.[19]
This means that MBS has an incentive to make the partnership
profitable.  A mere change in management that will not result in
the destruction of a business is not a sufficient basis on which
to grant a preliminary injunction.  *See Salt Lake Tribune Publ'g
Co. v. AT&T Corp.*, 320 F.2d 1081, 1105-06 (10th Cir. 2003)
(refusing to grant a preliminary injunction preventing the
removal of a newspaper manager where asserted irreparable harm
was the loss of subscribers and advertisers that would result
from changes of management).  The risk that the substitute
general partner would run the partnerships into the ground is
speculative, and does not amount to the type of "presently
existing actual threat" that is required to obtain a preliminary
injunction.  *Emerson*, 270 F.3d at 262.

　　　Finally, there was no testimony that the partnerships would
become bankrupt before a trial on the merits.  Indeed, as Michael
Fowler, the vice president of SAFG Retirement Services,
testified, the purpose of installing a substitute general partner
is to protect SunAmerica's investment and prevent the demise of
the projects.  Further, while Mrs. Foley testified that VOB had
to reduce its staff and morale was low, she did not indicate that
operations would have to cease before trial.  Moreover, even

---

[19]　　*Id*. at ¶ 5(b).

assuming the six converted properties were completely destroyed,
this would not rise to level of destruction of plaintiffs' entire
business.  In fact, this would not even amount to the destruction
of over half of plaintiffs' business.  If plaintiffs ultimately
prevail in their argument that the conversions were improper,
they will be reinstated as general partners and will recover the
monetary disbursements they would have otherwise received in the
interim, as well as attorneys' fees.[20]  Plaintiffs have not shown
that imposing these remedies after trial on the merits would fail
to compensate them for their loss of business, or that the
business itself would be destroyed by the time this litigation is
completed.

   b. Loss of Future Funding and Developments

   Next, plaintiffs argue that they will lose the opportunity
to obtain tax credits for new projects if the conversions are
allowed to stand.  Specifically, plaintiffs assert that they will
be unable to go forward with a proposed development in New
Orleans, and will be prevented from submitting applications for
LIHTCs this year and in future years.  Plaintiffs must
demonstrate a likelihood that irreparable harm will occur if a
preliminary injunction does not issue; the remote possibility of
future injury is not sufficient grounds for the grant of a

---

[20]    R. Doc. 67-2 at 59.

preliminary injunction. 9 WRIGHT, MILLER, & KANE, FEDERAL
PRACTICE AND PROCEDURE § 2948.1; *see Micro Data Base Systems,
Inc. v. Nellcor Puritan Bennett, Inc.*, 165 F.3d 1154, 1156 (7th
Cir. 1999)(requiring "concrete evidence" of irreparable injury).
Plaintiffs did not meet this burden.

Plaintiffs indicate that they have partnered with the New
Orleans Redevelopment Authority ("NORA") on a project to build
sixty single-family homes and assert that they will lose this
proposed development absent an injunction against their
conversion as general partners in the SunAmerica projects.  But
Mrs. Foley testified that the conversions have not yet posed a
problem with NORA, nor have the plaintiffs even disclosed them.
Thus, plaintiffs have made no showing that this project is in
jeopardy at all, much less that if it does not go forward it will
be because of their conversion as general partners in unrelated
projects, and not due to some other problem, such as an inability
to obtain tax credits or syndication.  Plaintiffs have not only
failed to causally link this potential injury to the conversions,
but they also have failed to demonstrate how the loss of this
proposed development would result in anything other than a
financial loss.

Next plaintiffs argue that in the absence of a preliminary
injunction they will be disqualified from submitting an
application for LIHTCs in Louisiana this year and in future

20

years.  Plaintiffs assert that under section F(3)(i) of the
Louisiana Housing Finance Agency ("LHFA") rules, a change of a
general partner without agency consent results in
disqualification.[21]  Plaintiffs, therefore, allege that they will
be unable to sign the certification that is required to be
submitted with an application to the LHFA.

At the hearing, Gary Elkins, a board-certified tax attorney
with twenty-five years of experience in the area of LIHTCs,
testified as an expert on LIHTCs, including the application and
allocation process, the closing of awards, implementation and
compliance and the related forms of financing of low-income
housing developments.  Mr. Elkins explained that section F(3)(i)
of the LHFA rules must be read in conjunction with the sentence
at the beginning of section F(3) which states that "[t]he Agency
shall disqualify any [applicant]... who is not in good standing
with the Agency, as defined herein."[22]  The provision, therefore,
is not self-executing, but depends on affirmative action of the
agency to disqualify an applicant.  Under the 2011 application
timeline, LHFA was required to send notices to individuals and
entities disqualified under section F by June 15, 2011.
Accordingly, the Foleys should have already received notice from

---

[21]     Joint Ex. 84 at 14.

[22]     *Id*. at 13.

the LHFA if the agency considered them to be disqualified from submitting an application.[23]  The Agency has not done so. Indeed, the LHFA received written notice of the conversions of the six VOB general partners in December of 2010.  That the LHFA is aware of the conversions, but did not disqualify the Foleys undermines plaintiffs' argument that they are foreclosed from applying for LIHTCs in Louisiana absent an injunction.  Moreover, even if the plaintiffs had received notice of disqualification, this would not necessarily justify a grant of preliminary injunction.  The LHFA provides an appeals process through which applicants can contest a determination of disqualification. Applicants are given an opportunity to remedy their status and change the agency's finding.[24]  *See Morgan v. Fletcher*, 518 F.2d 236, 238 (5th Cir. 1975)(reversing the district court's grant of a preliminary injunction to a terminated employee where agency review, in the form of a full hearing, was available to her). This collateral appeals process weighs against a finding of irreparable injury.

---

[23]    The Court notes that the Foleys could utilize the provision following the certification section of the application that allows the applicant to explain their answers if they did not feel confident of their status when submitting their application.  Def. Ex. 19.

[24]    There is also an appeals process for challenging LHFA's scoring of applications.

In Mississippi and Tennessee, the conversion of a general partner without agency consent does not disqualify an applicant, and like Louisiana, the Mississippi and Tennessee agencies provide a process through which plaintiffs could appeal a determination of ineligibility.[25]

In Mississippi, there are four groups of applicants who are ineligible to apply for LIHTCs: (1) applicants who transfer credits to a third-party prior to the issuance of 8609 forms; (2) persons under debarment, proposed debarment, or suspension by a federal agency or other state Housing Finance Agency; (3) owners who have had credits recaptured; and (4) owners of LIHTC developments which are not built as approved by the agency.[26] Plaintiffs have made no showing that they would fall into one of these categories.[27]   The Court credits Mr. Elkins' testimony that the removal of the VOB general partners does not rise to the level of debarment, proposed debarment or suspension contemplated in the application.   Further, the Court notes that the deadline for submission of applications for the 2011 funding cycle has passed,[28] and the plaintiffs cannot apply this year.   There is no

---

[25]    Joint Ex. 85 at 17; Joint Ex. 86 at 21-23

[26]    Joint Ex. 85 at 14.

[27]    *Id.* at 14.

[28]    *Id.* at 16.   The deadline was April 29, 2011.

23

evidence that plaintiffs would be ineligible were they to apply
in future years.

In Tennessee, applicants are ineligible if they have (1) a
felony conviction of any type within the last ten (10) years;(2)
a fine, suspension or debarment involving financial or housing
activities within the last five years imposed by any federal
agency; (3) are in bankruptcy or have had a bankruptcy discharged
within the last four years; or (4) have had a suspension of
required state licenses (Tennessee or any other state) within the
last ten years.[29]  The Tennessee Housing Development Agency
("THDA") also uses "sponsor characteristics" when determining
awards of points.  The THDA does not award points to applications
when individuals connected with the project are determined to
have been involved with projects that fell short of THDA's
standards.[30]  Mr. Elkins testified that plaintiffs are not
disqualified under the Tennessee eligibility requirements as a
result of the conversions.  Any failure to obtain points under
the "sponsor characteristic" section would not automatically
result in failure to obtain an allocation of tax credits.  In
fact, far from being ineligible in Tennessee, plaintiffs
submitted an application for the 2011 funding cycle.  Plaintiffs
did not disclose the conversions in their application, and did

---

[29]    Joint Ex. 86 at 13.

[30]    *Id*. at 19-20.

not receive an award of LIHTCs for reasons unrelated to the conversions.  This underscores the competitive nature of the application process and demonstrates that plaintiffs were unable to secure an award of LIHTCs irrespective of the conversions at issue in this litigation.

Plaintiffs have not met their burden of demonstrating the likelihood that their future development opportunities will be irreparably harmed in the absence of a preliminary injunction.

*c. Loss of Financing*

Plaintiffs also assert that they will be deprived of future third-party financing for their developments.  By plaintiffs' own admission, the market for LIHTCs has cooled.  The Court heard conflicting testimony regarding the status of the LIHTC market, but credits the testimony of Tim Smith that the market is tough, and although pricing has been coming back up in recent months, there are many deals that cannot go forward because they cannot get syndication.  Plaintiffs have not demonstrated that they will be unable to obtain financing and if so that it is because of the conversions.

Plaintiffs' allegations that their current business will be destroyed and that they will be deprived of future business opportunities are speculative and do not constitute a presently existing actual threat that would justify a finding of irreparable harm.

## 2. Measurement of Losses

Plaintiffs also argue that the destruction of their business constitutes irreparable injury because it will be difficult to measure their losses.  "[W]hen economic rights are especially difficult to calculate, a finding of irreparable harm may be appropriate." *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 (5th Cir. 1991).  In *Lakedreams*, the Fifth Circuit held that a delay in the plaintiff's ability to market a novelty t-shirt with fleeting demand constituted irreparable injury.  The Court observed that given the lack of sales history, any attempt to calculate damages caused by the delay would be too speculative. *Id.*  The present case, however, does not involve a product with fleeting or unprecedented demand.  Further, imposing the remedies set out in the contract - reinstatement as general partner, recovery of lost distributions, and attorney's fees - would not involve any especially difficult calculations.  Additionally, even if plaintiffs' loss is difficult to measure, this does not make it irreparable.  *Acierno v. New Castle County*, 40 F.3d 645, 655 (3d Cir. 1994)(finding that an economic loss, though difficult to measure, could be satisfied with a damage award after a trial on the merits and was therefore not irreparable).

## 3. Business Reputation

Plaintiffs also argue that they will suffer irreparable harm to their business reputations if a preliminary injunction is not

granted.  Plaintiffs assert that the affordable low-income housing development industry is small, and reputation is crucial. They allege that if they are converted from general partners on these six properties, it will be hard for them to overcome the resulting damage to their reputations.

Because an injury to reputation is not easily measurable, reputational harm is sometimes considered irreparable for purposes of granting injunctive relief.  11A WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.1; *see, e.g., Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997)(finding irreparable injury when a school board's egregiously biased determination that a superintendent was incompetent would inflict such severe damage to her professional reputation that a monetary award would be inadequate as well as speculative); *but see Sampson v. Murray*, 415 U.S. 61, 89-92 (1974) (finding that, in general, damage to reputation "falls short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction"); *Foxboro Co. v. Arabian Am. Oil Co.*, 805 F.2d 34, 37 (1st Cir. 1986)(finding that reputational harm business would suffer without an injunction to impede honoring a letter of credit was not irreparable injury); *Kafka v. Hagener*, 176 F.Supp.2d 1037, 1044 (D. Mont. 2001)(reputational harm that primarily affects the potential revenue of the business is not irreparable); *Medika*

27

*Int'l, Inc. v. Scanlan Int'l Inc.*, 830 F.Supp 81, 89 (D. P.R. 1993)(reputational harm that will result from public assumption that termination of distributorship agreement was due to lack of performance, breach of contract or some other negative inference was not irreparable).

Plaintiffs have not demonstrated that their reputations will be irreparably harmed if a preliminary injunction is not imposed. In *Valley v. Rapides Parish School Bd.*, the Court relied on expert testimony to reach its finding that the damage to the plaintiff's reputation would be so severe as to prevent her from obtaining any comparable employment. 118 F.3d at 1056. In this case there has been no such showing. The expert witnesses for both plaintiffs and defendants testified that they have worked with clients who were converted from general partners on projects and were able to continue doing business in the industry. Mr. Tim Smith, plaintiffs' expert, stated that two out of three of his clients who were removed or converted from their positions as general partners had to explain to their removal to syndicators, but were able to obtain credits and financing after the removal or conversion. Mr. Smith indicated that the third individual is still looking for financing. Mr. Elkins testified that he has known a number of individuals who have been removed as general partners, some for egregious wrongdoing, and continue to work in the industry. Plaintiffs' assertions of reputational harm are

28

speculative and unsubstantiated.  Their interests in the six
properties have been converted for months and they have not
demonstrated any intervening reputational damage.  Nor have
plaintiffs shown that any possible reputational harm would cause
irreparable injury, particularly if their management of the
projects is ultimately vindicated at trial.  Reputational harm
that can be corrected after trial on the merits is not considered
irreparable.  *See Sampson v. Murray*, 415 U.S. 61, 91 (1974) (any
damage to reputation caused by improper discharge could be
corrected by a later determination with additional procedural
safeguards).

Based on the foregoing analysis, the Court finds that
plaintiffs have failed to carry their burden to establish that
they will suffer irreparable injury in the absence of an
injunction.  Prevention of irreparable harm is an indispensable
element for granting a preliminary injunction and "[w]here no
irreparable injury is alleged and proved, denial of a preliminary
injunction is appropriate." *Canal Auth.*, 489 F.2d 567 at 574;
*Enter. Intern., Inc. v. Corporacion Estatal Petrolera*, 762 F.2d
464, 472 (5th Cir. 1985) (explaining that when the movant fails
to prove that irreparable injury will result absent injunction,
the preliminary injunction should be denied); *LaFarge Corp. v.
Cement Transp. Corp.*, 1996 WL 7042, at *1 (E.D. La. Jan. 9, 1996)
("A finding of no irreparable injury is, itself, sufficient to

deny a preliminary injunction."). Because plaintiffs failed to demonstrate irreparable injury, the Court must deny their motion for a preliminary injunction.

## IV. Conclusion

For the foregoing reasons, the Court DENIES plaintiffs' motion for a preliminary injunction.

New Orleans, Louisiana, this __15th__ day of September, 2011.


_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE